UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT
CIVIL ACTION NO. 3:09-cv-29-DCR

PRINCESSE D'ISENBOURG ET CIE LTD.                                           PLAINTIFF

VS.

KINDER CAVIAR, INC.                                                                    DEFENDANT.

### DEFENDANT KINDER CAVIAR, INC'S MEMORANDUM IN RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now Defendant, Kinder Caviar, Inc., and for its response and opposition to Plaintiff Princesse D'Isenbourg et Cie Ltd.'s Motion for Summary Judgment states as follows:

### FACTUAL BACKGROUND

Kinder Caviar, Inc. (hereinafter "Kinder"), is a producer and exporter of paddlefish caviar. In October 2008, Plaintiff Princesse D'Isenbourg et Cie, Ltd. (hereinafter "Plaintiff" or "Isenbourg") ordered 550.80 pounds of paddlefish caviar from Kinder to be shipped to the United Kingdom ("UK"). Kinder provided Isenbourg an invoice.[1] See Invoice dated October 20, 2008, attached hereto as "Exhibit 1". As payment, Isenbourg wired Kinder $129,438.00.

Export of paddlefish caviar from the United States to the United Kingdom is subject to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES").

---

[1] In her deposition taken June 23, 2010, Kinder's president, Cornelia Joyce Kinder, stated that the invoice attached hereto is the true and correct copy of the invoice Kinder sent to Isenbourg. (See Plaintiff's 6/23/10 Deposition of Cornelia Joyce Kinder (hereinafter "Joyce Kinder Depo.", attached hereto as "Exhibit 2") at pp. 166-67.) The invoice attached to Plaintiff's Motion and Memorandum in support of Summary Judgment [Record No. 39] as Exhibit 2 contains a different font and excludes language regarding claims. (Joyce Kinder Depo. at pp. 76, 77, 85, and 86.)

To export caviar, Kinder had to apply for an export permit from the United States Fish & Wildlife Service. The application process can take weeks or months. At the same time, Isenbourg acquired necessary CITES import documents from the United Kingdom. (See Joyce Kinder Depo. at p.66, lines 5-11; p.114).

The importation of food products into the United Kingdom is also subject to European Union ("EU") food health and safety regulations. As part of such requirements, the caviar shipment had to be accompanied by what is commonly referred to as an "EU Health Certificate" issued by the United States government. At the time of the shipment in question, EU Health Certificates for paddlefish caviar were issued by the Food and Drug Administration ("FDA"). For the shipment in question, FDA issued a two-page health certificate on two separate pieces of paper. (See Joyce Kinder Depo. at pp.143-44.)

During this "paperwork period", Tony Leung of Isenbourg and Joyce Kinder, president of Kinder, communicated frequently. Contrary to Plaintiff's statement that "[a]t no point in time prior to shipment of the caviar did Kinder request from Isenbourg any information about the import/export requirements," Joyce Kinder spoke with Tony Leung over the phone and asked him to provide information regarding EU and United Kingdom import requirements on or about October 27, 2008. (See Joyce Kinder Depo. at pp. 88-90). In response, Leung sent Joyce Kinder an email dated October 27, 2008, which provided Kinder with what Leung called a "check list" of information and documents needed for the caviar to be allowed entry into the United Kingdom. (See Plaintiff's Motion for SJ, Exhibit 8 [Record No. 39]). Most of the information concerned the CITES requirements, but Mr. Leung also discussed the information needed on the EU Health Certificate. Mr. Leung's email did not state whether the EU health

2

certificate needed to be one piece of paper or two pieces of paper.

At her deposition, Joyce Kinder testified that she used the information she received from Tony to prepare the labels for the shipment to the United Kingdom, along with information gathered from her prior two experiences shipping successfully to other countries in the European Union. (See Joyce Kinder Depo. at p. 125-126.)

The process of obtaining all necessary documents and permits was not complete until about February 2009. Kinder then shipped the caviar from Louisville, Kentucky, to Heathrow Airport in London, England on or about February 17, 2009. (See Joyce Kinder Depo. at pp.120-121.)

**Stoppage of the Caviar Shipment**

When the caviar shipment arrived in the United Kingdom, it was apparently refused entry by the officials at the U.K. Environment and Consumer Protection Port Health Division in the London Borough of Hillingdon (hereinafter "Hillingdon"). Hillingdon did <u>not</u> notify Kinder of the refused entry. Rather, consistent with EU regulations, Hillingdon notified <u>Isenbourg's</u> import agent, DHL Global Forwarding in the February 20, 2009, letter attached to Plaintiff's Motion [Record No. 39] as Exhibit 10 (hereinafter "Hillingdon letter").

In the letter, Hillingdon cited two alleged failures of the shipment to comply with EU food health and safety regulations: (1) lack of an identification mark indicating the approval number of the establishment of origin, as required by Article 5 of Regulation (EC) No. 853/2004; and (2) the health certificate's failure to be on a single sheet of paper in compliance with Commission Decision 2006/199/EC regarding imports from the United States. The Hillingdon letter stated that the addressee (DHL/Isenbourg) had the right to appeal the decision.

3

Otherwise, the caviar would have to be shipped back to the United States or a non-EU country or destroyed.

Kinder was notified of the stoppage by Isenbourg. (See Joyce Kinder Depo at pp. 130-31.) After Kinder was notified, Kinder told Plaintiff to appeal Hillingdon's decision. (See Joyce Kinder Depo at pp. 152-54.) Plaintiff told Kinder it would work with officials at Hillingdon to see if it could resolve the issue and told Kinder not to contact anyone for a few days while it was doing so. (See *id*. at pp. 153-54.)

Shipment back to the United States and then back to the United Kingdom would have involved another round of CITES permit applications and considerable time and expense. (See Joyce Kinder Depo. at p. 144, lines 24-25; p. 145, lines 1-3.) In search of an alternative solutions, Joyce Kinder contacted federal officials who put her in contact with Timothy Hansen of NOAA Fisheries. (See Joyce Kinder Depo. at pp. 144-145.) Hansen advised her that the situation should be able to be remedied without having the paddlefish caviar shipped back to the United States. (See *id*. at p.145.) Hansen put Joyce Kinder in touch with Stephane Vrignaud, NOAA representative to the EU, U.S. Mission to the EU, and Steve Knight of the United States Department of Agriculture at the US Embassy. (See *id*. at pp. 146-48.)

Following the advice of Vrignaud and these other officials, Kinder requested a new, one-page EU health certificate from the FDA and prepared labels for the seven boxes of caviar with Kinder's EU health and safety approval number on it.[2] (See Joyce Kinder Depo. at pp. 144-150.) Kinder sent the certificate and labels overnight to Hillingdon Inspector Nicholas Green, but

---

[2] Defendant notes that an email from Stephane Vrignaud to Joyce Kinder (attached hereto as "Exhibit 3") suggests that the labels in question should be coming from the "importer."

4

Inspector Green told Steve Knight that he would not accept the new documents, even though Steve Knight told Kinder that the new documents would have remedied Hillingdon's concerns. (See *id*. at pp.148-151; pp. 155-57; pp. 170-171.)

As Kinder was trying to find a solution that would provide entry of the caviar into the United Kingdom without the time and expense of re-export, Joyce Kinder specifically told Isenbourg not to ship the caviar back to the United States. (See Joyce Kinder Depo. at pp. 185, 194.) In April 2009, however, Isenbourg apparently instructed its import agent to ship the caviar back to the United States. Kinder objected as it had not had sufficient time to ensure that all proper paperwork was in place for a return of the caviar to the United States. (See Joyce Kinder Depo. at p.206, lines 22-23.)

Despite the lack of paperwork, the paddlefish caviar was returned to the United States and released to Kinder's custody. The shipment, however, lacked the original export permit documents which Kinder needed to apply for a re-export. Kinder received these documents a few weeks later only after multiple conversations with DHL representatives in the United States and Europe, which further delayed Kinder's ability to apply for any permits to ship the caviar back to the United Kingdom. (See fax from Joyce Kinder to DHL dated 4/8/09, attached hereto as "Exhibit 4"; email from Kinder to DHL dated 4/22/09 attached hereto as "Exhibit 5").

**Damage to the Shipment**

Moreover, when Kinder examined the returned shipment of caviar at the airport, Kinder observed that the shipment was damaged. As a perishable item, the caviar is required to be kept frozen at a certain temperature. However, the condition of the boxes and the packing materials inside each box and cooler suggested that the shipment had thawed and then re-froze.

According to witness Steve Kinder, co-owner of Kinder, "[T] he peanuts on the inside of the boxes were stuck to all the gel packs where they had been wet and then refrozen. (See Plaintiff's 6/23/10 Deposition of Steve Kinder (hereinafter "Steve Kinder Depo."), attached hereto as "Exhibit 6", at p. 49.) Steve Kinder also noted that the boxes were "soaking wet" and that some of the caviar tins were dented. (See Steve Kinder Depo. at pp.49, 52.)

Upon seeing the damage, Kinder preserved the caviar at the appropriate temperature and notifed Isenbourg of the damage. Isenbourg had stated to Kinder that it had obtained insurance coverage for the shipment back to the United States, and Kinder attempted to ascertain if Isenbourg would file an insurance claim for the caviar. When Isenbourg did not cooperate with Kinder on any insurance claim filing, Kinder filed an insurance claim with the cargo carrier, United Airlines, and has continued to preserve the paddlefish caviar until it is finally determined whether the paddlefish caviar is damaged. (See Joyce Kinder Depo. at pp.209, lines 20-22; Steve Kinder Depo. at pp.54-55.)

Despite numerous inquiries, United Airlines has refused to provide a determination on Kinder's claim, and Kinder has named United Airlines as a third-party plaintiff [Record No. 38].

In so preserving the caviar, Kinder considered the caviar to belong to Isenbourg. (See Steve Kinder Depo. at p.60, lines 20-23.) Prior counsel for Plaintiff informed undersigned counsel that Isenbourg no longer wants the caviar.

**Caviar Tins**

Plaintiff has also claimed a breach of contract in which Kinder allegedly agreed to purchase caviar tins from Isenbourg for 1,476 Euros. In support of this claim, Plaintiff has submitted an invoice for the caviar tins dated February 13, 2009, as Exhibit 5 to its Motion for

6

Summary Judgment [Record No. 39]. In her deposition, however, Joyce Kinder stated that she had never seen such an invoice. She also testified that while Kinder had discussed purchasing caviar tins from Plaintiff, Kinder and Isenbourg had ultimately agreed to an agreement where she would distribute tins for Isenbourg rather than purchase the tins outright. (See Joyce Kinder Depo. at p. 94, lines 13-14; p. 102, lines 12-20.)

## ARGUMENT

Fed. R. Civ. P. 56(c) provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact, <u>and</u> that the movant is entitled to judgment as a matter of law." (Emphasis added.) However, summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248. For the foregoing reasons, Plaintiff has not shown that it is entitled to summary judgment as a matter of law.

    **A. The "Contract" between Kinder and Isenbourg is Ambiguous as to Responsibility for Import Clearance into the United Kingdom.**

Plaintiff argues that because the invoice states that Kinder was to ship the product to Isenbourg's London address, the only reasonable interpretation of the invoice is that Kinder had sole responsibility to ensure that the shipment to meet all EU and UK import requirements.[3] However, Kinder's president, who negotiated the agreement with Isenbourg, has testified that import clearance is a responsibility of the importer and its agents. (See Joyce Kinder Depo. at pp. 109-10.) Moreover, the conduct of the parties indicates that Isenbourg had responsibility for

---

[3] Plaintiff's motion relies on Kentucky contract law. However, the sale of caviar by Kinder to Isenbourg should be treated as a contract for a sale of good under the Uniform Commercial Code, KRS 355.2-100 et seq.

7

import clearance requirements, as it applied for and provided the necessary import permits under CITES, and provided a self-described "check list" of import requirements to Kinder. Isenbourg's conduct in becoming active in the discussions with Hillingdon after the shipment was stopped also indicates that it believed it had at least some responsibility for import clearance. Finally, the fact that Isenbourg was able to direct the shipment of the caviar back to the United States indicates that the EU holds Isenbourg responsible for EU import requirements.

Plaintiff has submitted an affidavit, without additional support, that "it is customary" in the caviar industry for the exporter to take responsibility for compliance with importation requirements. However, under the EU Regulation cited by the Hillingdon letter in its rejection of the shipment, Regulation (EC) No 853/2004, the *importer* is required to "ensure" that imported food products meet the EU labeling requirements. See Article 6(1)(d) of Regulation (EC) No 853/2004, attached hereto as "Exhibit 7". This requirement is evidenced by the fact that Hillingdon's letter is addressed to the importer's agent and grants the importer the right to appeal a decision. Plaintiff has presented no evidence indicating that the parties intended to reallocate this responsibility to Defendant Kinder. Therefore there is a genuine issue of material fact as to whether a reasonable person would find the caviar purchase agreement between the parties "unambiguous."

### B. Even if Kinder was Responsible for Import Clearance, Isenbourg Did Not Provide Kinder Adequate Opportunity to Cure the Situation.

By sending the shipment back to the United States over Kinder's objection and without provided all the necessary accompanying paperwork, Isenbourg did not provide Kinder with

8

adequate opportunity to cure the situation by delaying Kinder's ability to re-export the caviar to the United Kingdom. Moreover, the damage to the caviar that likely occurred on the return trip to the United States compromised Kinder's ability to re-ship the caviar and fulfill the contract.

### C. Kinder is not "Unjustly Enriched" by Retaining Isenbourg's Funds and the Caviar due to the Damage to the Caviar as a Result of Isenbourg's Decision to Ship the Caviar Back to the United States.

As discussed above, the caviar may have been damaged on its return trip to the United States. Kinder has preserved the caviar for Isenbourg and for purposes of having an insurance carrier determine the extent of any damage. Given the damage, the caviar is likely worth significantly less that the amount Kinder received for it. Therefore, there is genuine issue of material fact as to whether Kinder has been "unjustly enriched" by retaining Isenbourg's payment and holding the damaged caviar.

### D. There is Genuine Issue of Material Fact as to the Terms of any Caviar Tin Agreement between Isenbourg and Kinder.

As discussed above, Joyce Kinder has testified that Kinder did not enter an agreement to purchase the caviar tins for 1,476 Euros, and had never seen the invoice Plaintiff presents with its Motion. Therefore, there is a genuine issue of material fact as to the existence and terms of any Caviar Tin Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied.

        Respectfully submitted,

        /s/ Shannan Stamper Carroll
        Teresa J. Hill
        Shannan Stamper Carroll
        Brown & Hill, PLLC
        143 W. Woodford Street, Ste. 2
        Lawrenceburg, KY  40342
        (502) 859-3744
        thill@brown-hill.com
        scarroll@brown-hill.com

        *Counsel for Defendant, Kinder Caviar, Inc*

## CERTIFICATE OF SERVICE

Copies of the foregoing were served on the following electronically this 3rd day of August, 2010:

Scott P. Zoppoth
Jennifer L. Hulse
The Zoppoth Law Firm
1600 Kentucky Home Life Building
239 South Fifth Street
Louisville, KY 40202
(502) 568-8884
spz@spzlaw.com
jlh@spzlaw.com


/s/ Shannan Stamper Carroll